# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOSHUA BASS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-5175** |
| **SUPERIOR ENERGY SERVICES, INC. et al.** | **SECTION: "G"(4)** |

## ORDER AND REASONS

In this litigation, Plaintiff Joshua Bass, who worked for Nabors Offshore Services ("Nabors,") has filed suit against Superior Energy Services ("Superior,") a co-contractor on a "gravel pack operation" that the two companies were performing for Energy XXI GOM, LLC ("Energy XXI")[1] on Energy XXI's "West Delta 73" offshore platform; Bass seeks damages for injuries he allegedly sustained while moving heavy equipment on that platform. Before the Court is Superior's "Motion for Summary Judgment,"[2] in which Superior seeks dismissal of Bass's negligence claims against it because, allegedly, as a matter of law, it owed no duty to Bass.[3] After considering the complaint, the pending motion, the memoranda in support, the memoranda in opposition, the record, and the applicable law, the Court will deny the pending motion.

---

[1] In an earlier Order, the Court granted Energy XXI's unopposed motion for Summary Judgment, terminating it from the case. *See* Rec. Doc. 67.

[2] Rec. Doc. 42.

[3] Rec. Doc. 42-1.

## I. Background

*A.*    *Factual Background*

On June 28, 2012, Bass was working as a roustabout for Nabors, which had been hired as an independent contractor by Energy XXI,[4] on Energy XXI's "West Delta 73," a fixed offshore platform on the Outer Continental Shelf off the coast of Louisiana.[5] Superior, another independent contractor hired by Energy XXI,[6] was present at the platform with Nabors that day to perform a "gravel pack" operation with Nabors.[7] During this process, Superior was to take a 75-foot jumper hose from its boat and attach it to the platform.[8] To move the hose into position on the platform, Nabors used its platform crane, which was operated by a Nabors employee.[9] After the hose had been partially moved so that one end sat on the floor of the platform's pipe rack area and the other end remained elevated, Bass, who was in the pipe rack area, attempted to move the hose by manually pulling on it.[10] The hose weighed over one thousand pounds,[11] and Bass allegedly injured his neck as he attempted to move the hose.[12]

---

[4]  Rec. Doc. 1-2 at p. 2; Rec. Doc. 42-1 at p. 1.

[5]  Rec. Doc. 49 at p. 1.

[6]  Rec. Doc. 1-2 at p. 2; Rec. Doc. 42-1 at p. 1.

[7]  Rec. Doc. 49 at p. 1.

[8]  *Id.* at p. 2.

[9]  *Id.*

[10]  *Id.*; Rec. Doc. 1-2 at p. 2.

[11]  Rec. Doc. 42-1 at pp. 2; 13.

[12]  Rec. Doc. 49 at p. 3.

**B.      Procedural Background**

Bass filed a complaint in the Civil District Court for the Parish of Orleans on June 28, 2013, alleging that Superior's and Energy XXI's negligence caused his injuries.[13] Energy XXI filed a "Notice of Removal" in this Court on July 26, 2013. Energy XXI filed a "Motion for Summary Judgment" on June 16, 2014.[14] Bass did not oppose Energy XXI's "Motion for Summary Judgment," and this Court granted the motion on July 22, 2014,[15] terminating Energy XXI as a party. Superior filed the pending "Motion for Summary Judgment" on June 20, 2014.[16] Bass filed an "Opposition to Superior Energy Service's Motion for Summary Judgment" on July 1, 2014.[17] On July 8, 2014, with leave of Court, Superior filed a reply in support of its motion.[18] On July 16, 2014, with leave of Court, Bass filed a "Supplemental Opposition to Superior Energy Services, Inc.'s Motion for Summary Judgment."[19] On August 7, 2014, with leave of Court, Superior filed a "Memorandum in Response to Plaintiff's Supplemental Memorandum."[20]

---

[13]  Rec. Doc. 1 at p. 1.

[14]  Rec. Doc. 40.

[15]  Rec. Doc. 67.

[16]  Rec. Doc. 42.

[17]  Rec. Doc. 49.

[18]  Rec. Doc. 58.

[19]  Rec. Doc. 63.

[20]  Rec. Doc. 72.

## II. Parties' Arguments

**A.**     ***Superior's "Motion for Summary Judgment"***[21]

   **1.     Duty**

In support of its "Motion for Summary Judgment," Superior contends that is entitled to summary judgment in its favor because, even assuming that a Superior supervisor told Bass to move the hose, as Bass alleges, Bass will be unable to show that Superior owed him a duty.[22] In support of its argument, Superior relies upon the unpublished Fifth Circuit Court of Appeals case of *McCarroll v. Wood Group Management Services, Inc.*[23] According to Superior, the Fifth Circuit in *McCarroll* affirmed the district court's grant of summary judgment in an analogous situation where the plaintiff claimed that the negligence of a co-contractor caused his injury.[24]

Superior asserts that the Fifth Circuit held in *McCarroll* that an independent contractor could not be held liable under the plaintiff's theory of "temporary supervision" because the independent contractor did not have "supervisory authority" over the plaintiff by virtue of the plaintiff's helping its employees.[25] Finding no supervisory authority, Superior contends, the Fifth Circuit concluded that the independent contractor owed no duty to the plaintiff.[26] Superior argues that Bass's

---

[21] Rec. Doc. 42.

[22] Rec. Doc. 42-1 at  p. 9 (citing *Lemann v. Essen Lange Daiquiris, Inc.*, 2005-1095, 923 So.2d 627, 632–33 (La. 3/10/06)).

[23] 561 Fed. App'x 407 (5th Cir. 2014). The Court notes that under Fifth Circuit Rule 47.5.4, "[u]npublished opinions issued on or after January 1, 1996 are not precedent, except under the doctrine of res judicata, collateral estoppel or law of the case (or similarly to show double jeopardy, notice, sanctionable conduct, entitlement to attorney's fees, or the like)." 5TH CIR. R. 47.5.4.

[24] Rec. Doc. 42-1 at pp. 9–10.

[25] *Id.* at p. 10.

[26] *Id.* at p. 10.

"argument in this case that he was 'turned over' to another company to be supervised is even more tenuous than the situation in *McCarroll*,"[27] because Bass "admitted through his own testimony" that his immediate supervisor at all times remained Nabors employee Clyde Foreman.[28] Thus, Superior maintains, Bass "will be unable to establish that Superior was exercising 'supervisory authority' over him in this case."[29] Superior specifically quotes Foreman's deposition, in which Foreman stated that the "whole roustabout crew" (which included Bass) was participating in the gravel packing operation pursuant to Foreman's instructions,[30] and that Bass was under no obligation to follow instructions from Superior personnel.[31]

Superior also quotes the deposition of Earl Pradillo, another Nabors supervisor, stating that he did not tell Bass that Bass was to take his instructions from any Superior employee.[32] Pradillo, according to Superior, also testified that Bass was supposed to take instructions from Foreman and not any third-party companies.[33] Accordingly, Superior argues that Bass "will be unable to establish that Nabors granted Superior 'supervisory authority' over him, as is required under the applicable U.S. Fifth Circuit jurisprudence to establish the existence of a duty on the part of Superior to [Bass]."[34]

---

[27] *Id.*

[28] *Id.* at p. 11.

[29] *Id.*

[30] *Id.*

[31] *Id.* at p. 12.

[32] *Id.*

[33] *Id.*

[34] *Id.* at p. 13.

2.      **Breach**

Superior further argues that it is entitled to summary judgment in its favor because, "even if it were assumed . . . that [Bass] could establish the existence of a duty . . . , [Bass] will be unable to establish that Superior breached any such duty."[35] According to Superior, Bass alleges that Superior was negligent because an unidentified Superior employee requested that Bass "move the hose back."[36] Superior contends that Bass had "admitted that the Superior employee did not request that [Bass] bend down and attempt to manually move an object that weighed over 1 ton while a crane was at all times readily available and attached to the hoses."[37] Thus, according to Superior, "[i]t is clear that, under these circumstances . . . [Bass] will be unable to establish any breach of duty by Superior."[38] Superior argues that this conclusion is "supported by the well-settled case law which holds that a principal is not responsible for the actions of an independent contractor when the principal only gives general instructions instead of detailed direction concerning the method of work."[39] Superior contends that Bass has alleged only that an unidentified Superior employee provided "at most, a general request when he allegedly asked that the hose be moved back."[40] Superior argues that Bass "was at all times free to move the hose in the manner he deemed

---

[35] *Id.*

[36] *Id.* Superior denies that any of its employees requested that Bass move the hose. *Id.*

[37] *Id.*

[38] *Id.*

[39] *Id.* (citing *Landry v. Huthnance Drilling Co.*, 889 F.2d 1469, 1471 (5th Cir. 1989)).

[40] *Id.*

appropriate, including by using the Nabors crane or by requesting help from his co-workers." Therefore, Superior asserts, it is not liable as a matter of law.[41]

**B.     *Bass's Opposition***

    **1.     Duty**

        **a.     Supervisory Control**

In opposition to the pending motion, Bass asserts that genuine issues of material fact preclude the award of summary judgment to Superior, because "the main issue is whether Superior's employees instructed Mr. Bass to perform the task in which he was injured," and because Bass testified that "he was told by a Superior supervisor" to move the hose.[42]  Bass asserts that although "Superior relies on the contract between Nabors and Energy [XXI]" in support of its assertion that Nabors "retained control over its employees," the facts of the situation at issue here "undermine that reliance," since "a Superior supervisor instructed Mr. Bass to perform the task which ultimately injured him," thereby assuming supervisory control over him.[43]

Indeed, Bass asserts, "the Nabors supervisor on the platform on June 28, 2012 testified that neither he nor the rig manager were in charge of the jumper hose loading operation being performed," and "Mr. Foreman did not give Mr. Bass any instructions that day."[44]  Bass maintains that "[t]he only instructions given to [him] were those by the Superior supervisor who told him to move the end of the jumper hose."[45]

---

[41]  *Id.* at p. 14.

[42]  Rec. Doc. 49 at pp. 4–5.

[43]  *Id.* at p. 5.

[44]  *Id.*

[45]  *Id.*

Bass argues that the present situation is distinguishable from *McCarroll*, cited by Superior, because the plaintiff in *McCarroll* "showed no evidence that the other independent contractor working on the platform was supervising him when he was injured," whereas Bass's deposition here "is evidence of Superior's assumption of supervision over him."[46] Bass further asserts that *McCarroll* is distinguishable from the present case because Foreman testified that "he was not in a position on the rig or platform to give Mr. Bass instructions," that he "gave Mr. Bass no instructions for completing the work on June 28, 2012," and that "neither he nor the Nabors crane operator were in charge of the jumper hose placement operation."[47]   Consequently, Bass argues, Superior owed a legal duty to him based on "its control over the jumper hose loading task in which Mr. Bass was injured."[48]

Bass further asserts that "there is question of fact as to whether Mr. Bass should have been assisting in the operation."[49] In support of this assertion, Bass cites the deposition of Ernest Villejoin, Superior's "second supervisor," stating that platform personnel "only assisted" with jumper hose placement operations "on occasion."[50] Bass also cites Foreman's deposition in which Foreman stated that he would not allow any employee to remain on the platform if that employee was not involved with the jumper hose placement operation.[51] According to Bass, the fact that he

---

[46] *Id.*

[47] *Id.* at pp. 5–6.

[48] *Id.*

[49] *Id.* at p. 7.

[50] *Id.*

[51] *Id.*

was not taken off the floor as unnecessary to moving the hose, but received no instructions from Nabors supervisors, "begs the question of who was instructing [him] and supervising him."[52]

Bass further asserts that "there is clearly a genuine issue of material fact on whether Superior owed Mr. Bass a duty" because Bass's expert, Bob Borison, "opined that, by instructing Mr. Bass to move the end of the jumper hose, Superior took responsibility for supervising Mr. Bass and should have provided adequate instructions to [him] in performing the work."[53] Bass maintains that notwithstanding Superior's assertions that he "could have refused to perform the task," he "was simply following acceptable industry standards by assisting a fellow working on the platform," an assertion confirmed by Foreman in his deposition, in which he stated that "all of the personnel on the platform worked 'as a team.'"[54]

Additionally, Bass asserts, Foreman, Villejoin, and David Kiser, the Superior supervisor, sted in their depositions that the hose was in an unusual location, creating "a unique or rare situation that required Superior's supervisors to take control and supervise Mr. Bass."[55] Indeed, Bass argues, he stated in his deposition that he was told in his training with Nabors that "he was to take instructions from whoever's in charge of the job."[56]

---

[52] *Id.*

[53] *Id.* at p. 7.

[54] *Id.* at pp. 7–8.

[55] *Id.*

[56] *Id.*

### b.    Hazardous Condition

Bass asserts that under Louisiana law, the "the existence of a duty is a question of law . . . [and] varies depends on the facts, circumstances, and context of each case."[57] Further, Bass argues, "[a] contractor owes an obligation toward third persons to refrain from creating a hazardous condition."[58] Applying these propositions to the facts here, Bass points to the remarks he made in his deposition that: (1) he did not know how much the hose weighed; (2) he had never before lifted or moved a jumper hose; and (3) he was not given any instruction on how to move the hose nor any tools to move it.[59] In these circumstances, he contends,"Superior's instructions . . . created a danger for which [he] was not adequately trained or instructed."[60]

### 2.    Breach

Finally, Bass asserts that "the failure to provide adequate instructions was a breach of Superior's duty" to him,  because: (1) Bass "was unfamiliar with the weight of the hose," had "never manually moved the end of the jumper hose before," (2) because "proper instructions likely were not covered in the JSA meeting" conducted by Superior if, as Villejoin testified, the hose being on the floor was a rare situation;  (3) because the Superior supervisor could have "signaled for the crane operator to move the hose and reposition the hose, as that was the proper tool for moving the hose."[61]

---

[57] *Id.* at 6 (citing *Dupre v. Chevron U.S.A.*, 20 F.3d 154 (5th Cir. 1994)).

[58] *Id.* (citing *Lafont v. Chevron, U.S.A., Inc.*, 593 So.2d 416, 420 (La. App. 1 Cir. 1991)).

[59] *Id.* at pp. 6–7.

[60] *Id.* at p. 7.

[61] *Id.* at pp. 8–9.

Further, Bass argues, Borison stated in his deposition that "it is unrealistic to think that the Nabors hands [such as Bass] would not listen to the Superior supervisors when they tell a Nabors employee what to do when the Superior supervisors were in charge of the entire operation and telling the Nabors crane operator where to place the hose."[62]  In these circumstances, Bass maintains, "the lack of training and instruction was a breach of Superior's duty."[63]

Bass asserts that "it is clear that there are questions of fact as to whether Superior supervised Mr. Bass and whether Superior's supervision and instructions to Mr. Bass were the cause in fact of Mr. Bass's injuries."[64] These questions, according to Bass, make summary judgment improper.[65]

## C.    *Superior's Reply in Further Support of Summary Judgment*

In further support of its motion, Superior argues that Bass's opposition "highlights that there are no genuine issue [sic] of fact that preclude summary judgment in favor of Superior."[66] Superior points out that Bass has cited no case law to support his arguments,[67] maintains that it "remains undisputed" that Superior "did not provide [Bass] with instructions on how to perform his job," and asserts that "Superior had no supervisory authority over [Bass]."[68]

---

[62] *Id.*

[63] *Id.*

[64] *Id.*

[65] *Id.*

[66] Rec. Doc. 57 at p. 1.

[67] *Id.*

[68] *Id.*

11

### 1.    Duty

Addressing the issue of duty, Superior avers that Bass "admits" in his opposition that "he was not told [by Superior] how to move the hose, only to do so," further confirming that "he and he alone chose the work methodology that he allegedly employed at the time of his accident."[69]

Superior claims that in *Joyner v. Enesco Offshore Co.*, a section of this Court granted summary judgment in favor of the defendant in a case involving circumstances "nearly identical" to those present here.[70] In particular, Superior argues that the plaintiff in *Joyner* was injured while carrying out an instruction given by an employee of another independent contractor. According to Superior, the court in *Joyner* noted that the plaintiff was not given instructions on how to do his job.[71] Also important to the court, according to Superior, was that the plaintiff was free to choose "an appropriate work method" and free to refuse any "unsafe work procedure."[72]

Superior argues that the present case is analogous to *Joyner*, since Bass was not told how to do the job, and made the decision to lift the hose in violation of Nabors's own safety policies.[73] Thus, according to Superior, Bass's claim fails as a matter of law.[74]  Finally, Superior argues that it remains undisputed that only Nabors had supervisory authority over Bass, a fact that allegedly makes this case analogous to *McCarroll*.[75]

---

[69] *Id.* at p. 2.

[70] *Id.*

[71] *Id.* at p. 3.

[72] *Id.*

[73] *Id.*

[74] *Id.*

[75] *Id.* at pp. 3–4.

### 2.     Borrowed Employee

Superior notes that Bass asserts that Superior exercised supervisory control over him by requesting that he move the hose.[76]   In "claiming that Superior controlled and supervised him," Superior asserts, Bass admits that "he was a borrowed employee of Superior"  within the scope of the "borrowed employee doctrine" of the Longshore and Harbor Workers Compensation Act ("LHWCA").[77] According to Superior, "it is well-settled that a company that 'borrows' another company's Longshore employee temporarily is entitled to tort immunity" under the LHWCA.[78] Superior asserts that the "touchstone in determining borrowed employee status is control."[79] According to Superior, Louisiana courts make this determination by "look[ing] to who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation[.]"[80] Thus, Superior contends, when Bass argues that Superior controlled him, he admits that he was a borrowed employee of Superior, which in turn entitles Superior to tort immunity under the LHWCA.[81]

### D.     *Bass's Supplemental Opposition*

In further opposition to Superior's motion,[82] Bass argues that job descriptions for positions held by two Superior supervisors acting on the "West Delta 73" platform on the day Bass allegedly

---

[76]  *Id.* at p. 4.

[77]  *Id.*

[78]  *Id.*

[79]  *Id.*

[80]  *Id.* (citing *Ortega v. Semco, LLC*, 99-1296, 762 So.2d 276, 281 (La. App. 5 Cir. 5/30/00)).

[81]  *Id.* at p. 4.

[82]  Rec. Doc. 63.

13

sustained his injuries show that additional genuine issues of material fact exist, and "should preclude summary judgment."[83]

Bass alleges that David Kiser was Superior's "Service Supervisor," in charge of: (1) supervising employees on site; (2) "assuring compliance customer and safety requirements;" (3) maintaining adherence to "all safety and operations policies;" and (4) "planning assigning, and directing work."[84] Bass avers that Kiser "would not be on the platform during the gravel pack process," making him unable to "assure compliance with customer and safety requirements" related to the "hose loading process."[85] According to Bass, Kiser testifed that the "number two man" would be present on the platform to supervise activities there.

Bass contends that Ernest Villejoin stated in his deposition that he was Superior's "second supervisor in charge," and further argues that Villejoin "had primary responsibility among Superior personnel on the platform to dictate how work would be performed, as well as where the hoses would be placed."[86] Such responsibilities, Bass argues, exceed the duties set out in Villejoin's job description.[87] According to Bass, Villejoin's "Equipment Operator II" job description "does not include many of the supervisory activities which [Villejoin] described in his deposition."[88] This

---

[83]  Rec. Doc. 63 at p. 1.

[84]  Rec. Doc. 63 at pp. 1-2.

[85]  *Id.* at p. 2.

[86]  *Id.* at p. 2.

[87]  *Id.*

[88]  *Id.*

discrepancy, argues Bass, presents an issue of fact regarding whether Villejoin supervised Bass at the time Bass was allegedly injured.[89]

If Villejoin acted as a "second supervisor," Bass argues, he "should be held to the duties of a supervisor as described by Superior, which included 'ensuring compliance with customer and safety requirements['] and 'supervision of the employees on site while performing the job.'"[90] Thus, Bass argues, although Villejoin "may not have told" Bass "exactly how to perform the job," Villejoin still "was supervising the work being performed, including the task he assigned" to Bass.[91] In this capacity, Bass contends, Villejoin had "a duty to protect" him "from the creation of a hazardous condition."[92] According to Bass, Villejoin breached that duty by "failing to properly supervise [Bass]" and failing to "tell him how to perform" the task of moving the hose.[93]

Bass argues that *Joyner v. Ensco Offshore Co.*, cited by Superior,[94] is distinguishable from this case.[95] Specifically, Bass contends, the court in *Joyner* considered the plaintiff's many years of experience in a specialized technical field to be so "critical" to its analysis that it relieved the defendant of any duty to "prevent the plaintiff form injuring himself while performing" the task that the defendant assigned to him.[96] According to Bass, such facts are not present in case: Bass had been

---

[89] *Id.* at p. 2.

[90] *Id.* at pp. 2-3.

[91] *Id.* at p. 3.

[92] *Id.* at p. 4.

[93] *Id.* (citing *Lafont*, 593 So.2d at 420).

[94] Rec. Doc. 57.

[95] Rec. Doc. 63 at p. 3.

[96] *Id.*

a roustabout for Nabors for six months, and had less than two years' experience as a roustabout at the time he began working for Nabors.[97]

### E.    Superior's Supplemental Arguments in Favor of Summary Judgment

In response to Bass's opposition, and in further support of its motion,[98] Superior asserts that the two job descriptions are silent about Superior employees' relationships with third parties or co-contractors, and contends that Bass fails to explain why these job descriptions create a genuine issue of material fact.[99]

Moreover, Superior avers, Bass has not refuted the "undisputed fact" that Nabors did not give up supervisory authority over him, as is required "under the applicable Fifth Circuit jurisprudence."[100] On this point, Superior notes that Nabors's contract with Energy XXI provided that Nabors will be "in charge" of its personnel, and emphasizes that the Fifth Circuit has discussed the importance of contractual language in determining "control" over an independent contractor.[101] Superior also argues that "it is undisputed" that Foreman and Pradillo "were at all times present during, and participating in, the operation in question," and "unequivocally testified that Nabors retained supervisory authority over [Bass]." According to Superior,  Nabors's contract, plus Foreman and Pradillo's statements, "foreclose[] any argument by Plaintiff that his employer 'turned him over'" or "transferred supervisory authority over him to Superior."[102]

---

[97]  *Id.*

[98]  Rec. Doc. 72.

[99]  *Id.* at p. 1.

[100]  *Id.* (citing *McCarroll*, 561 Fed. App'x 407).

[101]  *Id.* at pp. 1-2 (citing *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548 (5th Cir. 1987).

[102]  *Id.* at p. 2.

Superior also argues that Bass failed to distinguish *Joyner* for two reasons.[103] First, Superior argues, Bass has failed to distinguish *Joyner* because the court in *Joyner* found that the defendant did not provide the plaintiff with specific instructions regarding how to do his job" and therefore owed no duty to the plaintiff.[104] Second, Superior contends, the *Joyner* plaintiff, like Bass, "chose his own work method and . . . possessed stop work authority."[105] Moreover, Superior argues, Bass was like the *Joyner* plaintiff in that he "was far from being an inexperienced 'green' employee," having stated in deposition that he had worked as a roustabout for around three years,  had moved co-flex hoses "on many occasions before the day of his alleged incident."[106] Further, Superior avers, Pradillo stated in his deposition that Bass had received safety training through Nabors, and Bass has not controverted this assertion.[107]

Finally, Superior cites several unpublished decisions from the Eastern and Western Districts of Louisiana. First, Superior cites *Verdin v. Kerr-McGee Corporation* in support of the propositions that  (1) "there is no duty between two co-independent contractors working for a common principal who have no contractual relationship;" (2) if, in the alternative, there is a duty, the contract between the plaintiff's employer and the common principal may create an independent contractor relationship in which the plaintiff is in control of the "means or manner of all work or services contracted for,"

---

[103] *Id.*

[104] *Id.* at p. 3.

[105] *Id.*

[106] *Id.* at pp. 3–4.

[107] *Id.*

negating any breach of the duty; and (3) co-contractors who make "suggestions or recommendations which need not necessarily be followed" cannot establish liability as a matter of law.[108]

Second, Superior alleges that "analogous cases" decided under the "relaxed standard" of the liability created by the Jones Act demonstrate that Bass cannot meet the more stringent standards of Louisiana law.[109] Specifically, Superior argues, in *Williams v. International Construction Group*, a section of this Court granted summary judgment in favor of the defendant in a case involving a plaintiff who was allegedly injured while moving a heavy object, and who argued that the defendant had not provided him with proper training and supervision.[110] Superior maintains that the court, in granting summary judgment, pointed out that the plaintiff: (1) chose to manually lift the object, even though he could have requested that the crane operate move the object; (2) could have asked for help, had "stop work authority;" and (3) "was trained to get help moving heavy objects."[111]

### III. Law and Analysis

**A.**    ***Law***

   **1.**    **Legal Standard: Summary Judgment**

In deciding a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, the Court will grant the moving party's request only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[112] Material facts are those facts

---

[108]  *Id.* (citing *Verdin*, 1997 WL 39308 at *2 (E.D. La. Jan. 30, 1997)).

[109]  *Id.* atpp. 4-5.

[110]  *Id.* at 5 (citing *Williams*, 2011 WL 1116312 (E.D. La. Mar. 23, 2011)).

[111]  *Id.*

[112]  FED. R. CIV. P. 56(a).

which "might affect the outcome of the suit"[113] under the applicable substantive law.[114] A "genuine dispute" of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[115]

On a motion for summary judgment, the Court "construes all facts and inferences in the light most favorable to the nonmoving party."[116] If the nonmoving party will have the burden of proof on an issue, the Court may only grant summary judgment against that party if "the evidence favoring [it] is insufficient to enable a reasonable jury to return a verdict in her favor."[117] Summary judgment "may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence,"[118] and even "when evidence exists in the summary judgment record but the nonmov[ing party] fails even to refer to it in response to the motion for summary judgment, that evidence is not properly before the district court."[119]

---

[113] *Id.*

[114] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[115] *Rogers v. Bromac Title Serv., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014) (citations omitted).

[116] *Id.* (citations omitted).

[117] *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990), *overruled on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 n.14 (5th Cir. 1994).

[118] *Id.* (citations omitted).

[119] *Malacara v. Gerber*, 353 F.3d 393, 405 (5th Cir. 2003).

### 2.      OCSLA

It is undisputed that the alleged accident at issue here occurred on the Outer Continental Shelf ("OCS") off the coast of Louisiana. Both parties therefore appear to agree that the Outer Continental Shelf Lands Act ("OCSLA")[120] is applicable here.[121]

#### a.      Incorporation of State Law

OCSLA was enacted "to define a body of law applicable to the seabed, the subsoil, and the fixed structures . . . on the [OCS]."[122] OCSLA provides that "the civil and criminal laws of the adjacent state" apply to parts of the OCS "which would be within the area of the State if its boundaries were extended seaward to the outer margin of the [OCS]."[123] The Fifth Circuit has held that "for state law to apply as surrogate federal law" pursuant to OCSLA, "three conditions must be met:" First, [t]he controversy must arise on a situs covered by OCSLA (i.e. the subsoil seabed, or artificial structures permanently or temporarily attached thereto;" Second, "[f]ederal maritime law must not apply of its own force;" and Third, "[t]he state law must not be inconsistent with federal law."[124]

#### b.      LHWCA

Superior asserts that "[a]s an employee of Nabors working on a fixed platform on the OCS, [Bass's] exclusive remedy against Nabors is to receive benefits under the [LHWCA]."[125] OCSLA

---

[120] 43 U.S.C. 1331 *et seq.*

[121] Rec. Doc. 49–1 at p. 1.; Rec. Doc. 42–7 at p. 1; Rec. Doc. 49 at p. 6.

[122] *Rodrigue v. Aetna Cas. and Surety Co.*, 395 U.S. 352, 355–56 (1969).

[123] 43 U.S.C. § 1333(2)(a).

[124] *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 782–83 (5th Cir. 2009) (en banc).

[125] Rec. Doc. 42–1 at p. 2.

provides that "compensation shall be payable under the provisions of the [LHWCA]" for "disability or death of an employee resulting from any injury occurring as a result of operations conducted on the OCS for the purposes of exploring for, developing, removing, or transporting by pipeline the natural resources . . . of the subsoil and seabed"[126] The Fifth Circuit instructs that courts, in determining whether the LHWCA applies to an action, are to ascertain whether the requisite "situs" and "status" are present through the following three inquiries: first, "whether the injury occurred on an OCSLA situs;" second, "whether OCSLA makes state law applicable;" and third, whether "the injured party's status makes the LHWCA applicable under OCSLA."[127]

The LHWCA, as codified at 33 U.S.C. § 903, states that "[e]xcept as otherwise provided in this section, compensation shall be payable under this chapter in respect of disability or death of an employee" At § 904, the LHWCA provides that "[c]ompensation shall be payable irrespective of fault as a cause for the injury."[128]  Further, at § 905(a), the LHWCA provides that "the liability of an employer prescribed in section 904 shall be exclusive and in place of all other liability of such employer to the employee.[129]  Accordingly, the statute, when applicable, establishes an exclusive, no-fault compensation regime for claims by employees against employers.[130]

---

[126]  *Alday v. Patterson Truck Line, Inc.*, 750 F.2d 375, 375 (1985).

[127]  *Demette v. Falcon Drilling Co., Inc.*, 280 F.3d 492, 496–98 (5th Cir. 2002) *overruled on other grounds by Grand Isle Shipyard v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009) (en banc). *See also Hudson v. Schlumberger Tech. Corp.*, 452 Fed. App'x 528 (5th Cir. 2011) (holding that the LHWCA applies by virtue of OCSLA if "the employee meets the situs and status requirements of § 1333").

[128]  *Id.*

[129]  33 U.S.C. § 905(a). One treatise observes that the "Section 905(a) bar . . . is broadly construed as a shield against tort liability." Thomas J. Schoenbaum, 1 Admiralty and Maritime Law § 7–4 (5th Ed. 2014).

[130]  *See* Thomas J. Schoenbaum, 1 Admiralty and Maritime Law § 7–1 (5th Ed. 2014) ("In return for compelling the employer to pay compensation without proof of negligence, the [LHWCA] provides a statutory scheme of benefits which are substantially less than tort damages, and grants the employer immunity from tort liability, regardless of how serious its fault may have been.").

According to Superior, "it is well-settled that a company that 'borrows' another company's Longshore employee temporarily is entitled to tort immunity" under the LHWCA.[131]  Addressing this issue, the Fifth Circuit has held that the LHWCA applies where the maritime worker was an employee or a "borrowed employee" of the defendant.[132] Borrowed employee status is an issue of law.[133] Nine factors determine whether a plaintiff is a borrowed employee within the meaning of the LHWCA:

> 1. Who has control over the employee and the work he is performing, beyond mere suggestions of details or cooperation?
>
> 2. Whose work is being performed?
>
> 3. Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?
>
> 4. Did the employee acquiesce in the new work situation?
>
> 5. Did the original employer terminate his relationship with the employee?
>
> 6. Who furnished tools and place for performance?
>
> 7. Was the new employment over a considerable length of time?
>
> 8. Who has the right to discharge the employee?
>
> 9. Who had the obligation to pay the employee?[134]

---

[131]  *Id.*

[132]  *Alday*, 750 F.2d at 375–76.

[133]  *Melancon v. Amoco Prod. Co.*, 834 F.2d 1238, 1244 (5th Cir. 1988).

[134]  *Alday*, 750 F.2d at 376.

In determining whether a borrowed employee-employer relationship exists, no single factor is decisive, and no fixed test is used.[135] However, the Fifth Circuit has indicated that "certain of these factors may be more important that others."[136] Specifically, the Fifth Circuit has given special weight to the "[1] control over the employee[,] . . . [2] [t]he furnishing of tools and the place of work, [3] whether the payroll employer has actually terminated his relationship with the employee now working on another's premises, and [3] the duration of the 'borrowing' relationship and the consequent acquiescence or not of the employee."[137]

### 3.    Duty

Although the parties dispute whether Bass's claims are barred by the LHWCA, it is undisputed that Bass's claims, if not barred, are governed by Louisiana law. Applying Louisiana law here, Bass alleges that Superior was negligent in instructing him to move the hose.  Article 2315 of the Louisiana Civil Code provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."[138] Article 2316 of the Louisiana Civil Code provides that "[e]very person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill."[139] To prove negligence under Louisiana law, the plaintiff must show that: (1) "the defendant had a duty to conform his conduct to a specific standard;" (2) "the defendant's conduct failed to conform to the appropriate standard;" (3) "the

---

[135] *West v. Kerr-McGee Corp.*, 765 F.2d 526, 531 (1985) ("[N]either control nor any other single answer to the inquiries 'is decisive, and no fixed test is used to determine the existence of a borrowed-servant relationship.'")

[136] *Alday*, 750 F.2d at 376.

[137] *Id.*

[138] La. Civ. Code art. 2315.

[139] La. Civ. Code  art. 2316.

23

defendant's substandard conduct was a cause in fact of the plaintiff's injuries;" (4) "the defendant's substandard conduct was a legal cause of the plaintiff's injuries;" and (5) "actual damages."[140]

In *Lemann v. Essen Lane Daiquiris*, the Louisiana Supreme Court held that the "threshold issue" of whether defendant owed a duty "is a question of law."[141] In determining whether the defendant owed a duty, the Louisiana Supreme Court instructs that:

> [T]he court must make a policy decision in light of the unique facts and circumstances presented. The inquiry is whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty.[142]

Although duty is a question of law, Louisiana courts do not grant summary judgment on the issue of duty where factual disputes exist or where credibility determinations are required.[143]

**B.**    *Analysis*

**1.**    **OCLSA**

The parties do not dispute that OCSLA governs the present action, and that either Louisiana law or the LHWCA therefore controls here. As noted above, the Fifth Circuit has held that "for state law to apply as surrogate federal law" pursuant to OCSLA, "three conditions must be met:" (1) [t]he controversy must arise on a situs covered by OCSLA (i.e. the subsoil seabed, or artificial structures permanently or temporarily attached thereto;" (2) "[f]ederal maritime law must not apply of its own

---

[140] *Lemann*, 2005-1095, 923 So.2d at 633 (La. 3/10/06).

[141] *Id.*

[142] 923 So.2d 627, 633

[143] *Parish v. L.M. Daigle Oil Co., Inc.*, 98-1716, 742 So.2d 18, 10–11 (La. App. 3 Cir. 6/23/99) ("Summary judgment is proper only where no duty exists  as a matter of law and no factual or credibility disputes exists."); *Coates v. Nettles*, 563 So.2d 1257, 1259 (La. App. 1 Cir. 1990) ("Where there is no factual dispute which exists and no credibility determination required, the question of the existence of a duty is a legal question within the province of the trial judge."). *See also Robertson v. Blanchard Contractors, Inc.*, No. 11-1453, 2012 WL 6202988 (E.D. La. Dec. 12, 2012) (Brown, J) (same).

24

force;" and (3) "[t]he state law must not be inconsistent with federal law."[144] Here, it is undisputed that the controversy arose on a fixed offshore platform, a situs covered by OCSLA.[145] Further, it also appears undisputed that the facts at issue here do not implicate federal maritime law.[146] Finally, although the parties dispute whether the LHWCA bars Bass's negligence claims against superior (a dispute addressed below), the parties do not argue that Louisiana law is inconsistent with federal law, and the Court finds no inconsistencies that would preclude the application of Louisiana law here. Therefore, since OCLSA applies, either Louisiana law or the LHWCA controls here.

### 2.    LHWCA

In its reply in further support of summary judgment, Superior asserts that to the extent Bass claims that Superior "controlled and supervised him," he"admit[s] that he was a borrowed employee of Superior."[147] Although "borrowed employee" status is an issue of law governed by the analysis of the factors set forth in *Alday*, of which control is one,[148] no single factor is dispositive of the inquiry.[149]  In its briefing related to borrowed employee status, Superior does not cite, much less apply, the nine *Alday* factors. Instead, Superior states that:

> It is well-settled that a company that "borrows another company's Longshore employe temporarily is entitled to tort immunity under the LHWCA. The touchstone in determining borrowed employee status is "control" (i.e. who has control over the

---

[144] *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 782–83 (5th Cir. 2009) (en banc).

[145] *Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352 (1969) (holding that OCSLA applied in an action arising from deaths occurring on fixed offshore drilling structures).

[146] *See Id.* at 359 ("Drilling platforms are not within admiralty jurisdiction.") (citations omitted).

[147] Rec. Doc. 57 at p. 4.

[148] *Alday*, 750 F.2d at 375–76.

[149] *West v. Kerr-McGee Corp.*, 765 F.2d 526, 531 (1985) ("[N]either control nor any other single answer to the inquiries 'is decisive, and no fixed test is used to determine the existence of a borrowed-servant relationship.'").

employee and the work he is performing, beyond mere suggestion of details or cooperation?)[150]

In light of Superior's briefing on this point, the Court is unable to determine, as a matter of law, how the application of the nine *Alday* factors require this Court to find that Bass was Superior's borrowed employee. To the extent that Superior argues that Bass's allegations of "supervisory control" are relevant to the inquiry, the Court notes that this first of nine *Alday* factors is disputed by the parties here. In its briefing related to negligence, Superior contends that Nabors's contract with Energy XXI establishes that "Nabors alone is authorized to instruct their employees on how they do their work."[151] Bass, addressing this point as it relates to negligence, cites Foreman's deposition in support of the proposition that "[n]either the rig manager, Mr. Pradillo, nor the crew supervisor, Mr. Foreman, were in charge of the job being performed on June 28, 2012."[152] Superior cites no authority supporting the proposition that these alleged circumstances conclude the borrowed employee inquiry, and offers no argument directed toward the other eight *Alday* factors. Taking the asserted facts and drawing all inferences in Bass's favor, genuine issues of material fact exist and the Court therefore cannot conclude, as a matter of law, that Bass was Superior's borrowed employee.

### 3.    Negligence

#### a.    Duty

In support of its motion, Superior asserts that "[i]t is clear that [Bass] will be unable to establish that Nabors granted Superior 'supervisory authority' over him as is required under the

---

[150]  Rec. Doc. 57 at p. 4.

[151]  Rec. Doc. 42–1 at p. 5 (citing Rec. Doc. 42–3 at pp. 6; 8; 10).

[152]  Rec. Doc. 49 at p. 2 (citing Rec. Doc. 49–2 at pp. 8–9).

applicable U.S. Fifth Circuit jurisprudence to establish the existence of a duty on the part of Superior to Plaintiff."[153] Bass, in turn, contends that "when a Superior supervisor instructed Mr. Bass to perform the task which ultimately injured him, Nabors lost supervisory control over Mr. Bass."[154]

In support of its argument that "the applicable U.S. Fifth Circuit jurisprudence" forecloses Bass from establishing the existence of a duty here, Superior cites *McCarroll v. Wood Group*, an unpublished, and thus non-precedential, Fifth Circuit opinion which it claims is "analogous" to the present case.[155] In *McCarroll*, the plaintiff, an employee of an independent contractor who was allegedly injured while working on a drilling platform, sued the successor in interest of another independent contractor also working on the drilling platform at the time he was allegedly injured.[156] In that case, the plaintiff's supervisor instructed him to assist with unloading containers attached to a platform crane, during which task a flagman employed by the defendant would signal to the defendant's crane operator to move containers onto the platform, whereupon the plaintiff would assist with guiding the containers and disconnecting the crane rigging.[157] During the operation, the plaintiff retrieved a pry bar to dislodge the crane rigging, and subsequently slipped on the platform, which was wet from rainfall, leading to his alleged injuries.[158] The plaintiff sued the defendant, claiming that he had been "handed over" to the defendant to assist with the operation, and was under

---

[153] Rec. Doc. 42–1 at pp. 12–13.

[154] Rec. Doc. 49 at p. 5.

[155] Rec. Doc. 42–1 at pp. 9–10 (citing 561 Fed. App'x 407).

[156] 561 Fed. App'x at 408.

[157] *Id.* at 408–9.

[158] *Id.* at 409.

the defendant's "supervisory control" at the time he was allegedly injured.[159] The district court granted summary judgment to the defendant, finding that the defendant owed the plaintiff no duty, since the defendant had not "exercise[d] supervision or control" over the plaintiff.[160] The United States Court of Appeals for the Fifth Circuit affirmed, reasoning that:

> It is clear that [the defendant] had no contractual or employment relationship with [the plaintiff] or with [the plaintiff's employer]. The tools and equipment that were supplied to [the plaintiff], including the pry bar [the plaintiff] retrieved from [his employer's] toolshed immediately before the accident, were supplied by [the plaintiff's employer] and not [the defendant]. It was [the plaintiff's employer's] foreman, not [the defendant's] employee, who told him to assist with the cargo transfer operations. [The plaintiff] has presented no evidence, and thus created no fact dispute, that during this operation he received instruction, direction, or materials from [the defendant's] employee. The fact that the [plaintiff's employer's] supervisor apparently did not remain to oversee [the plaintiff's] work assisting [the defendant] does not alter the analysis, as [the plaintif] was still working under [his employer's] supervisor's order to help with the unloading.[161]

Contrary to Superior's assertions, *McCarroll* does not conclude the Court's inquiry on the duty question. In *McCarroll*, the summary judgment record established that only the plaintiff's employer gave him any relevant orders. Here, by contrast, Bass alleges—and Superior disputes—whether a Superior employee directly ordered Bass to move the hose,[162] the action leading to his alleged injury. Accordingly, *McCarroll* does not foreclose Bass from making the requisite showing that Superior owed him a duty.

---

[159] *Id.*

[160] *Id.*

[161] *Id.* at 410.

[162] In Superior's "Statement of Uncontested Material Facts," Superior contends only that it is undisputed that "[Bass] *testified* that a Superior employee 'told [him] to move the hose.'" Rec. Doc. 42–7 at p .1. Bass claims that "[w]hether [he] was told to move the jumper hose by a Superior supervisor" is a contested fact. Rec. Doc. 49–1 at p 2.

The parties do not cite, and the Court has not found, a case in which the Louisiana Supreme Court specifically addressed what kind of duty, if any, exists in the circumstances allegedly present here, in which an employee of one contractor is allegedly told to perform a task by an employee of another contractor. Accordingly, the Court must make an "*Erie* guess"[163] in order to address this question.  To make an "*Erie* guess," the Court "employ[s] the appropriate Louisiana methodology to decide this issue the way that [it believes] the Supreme Court of Louisiana would decide it."[164] Courts in Louisiana "begin every legal analysis by examining primary sources of law: the State's Constitution, codes, and statutes."[165] These primary sources are "contrasted with persuasive or secondary sources of law, such as [Louisiana and other civil law] jurisprudence, doctrine, conventional usages, and equity, that may guide the court in reaching a decision in the absence of legislation and custom."[166]

Pursuant to LA. CIV. CODE art. 2315, "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." In determining whether a party is liable pursuant to Article 2315, the Louisiana Supreme Court instructs that "whether the defendant owed the plaintiff a duty" in a particular case is a "threshold issue" that is a "question of law," to be determined by considering "the unique facts and circumstances presented," and whether "the plaintiff has any law" that supports the claim that a duty exists.[167]

---

[163] *Shaw Constructors v. ICF Kaiser Engineers, Inc.*, 395 F.3d 533, 546–47 (5th Cir. 2004).

[164] *Id.*

[165] *Id.* at 547.

[166] *Id.* (quoting LA. CIV. CODE art. 1).

[167] *Lemann*, 923 So.2d at 633.

29

### i.      Law Regarding Duty

The Court initially considers whether any law supports the claim that Superior owed Bass a duty.[168] On this point, Bass cites *Lafont v. Chevron U.S.A.*, a decision from the Louisiana First Circuit Court of Appeals addressing the duty owed to fellow independent contractors.[169] There, the plaintiff allegedly sustained an injury while assisting a co-contractor's employees with dumping garbage.[170] Addressing the "duty owed a fellow independent contractor," the Louisiana First Circuit Court of Appeals stated that "as between two independent contractors who work on the same premises, either at the same time or one following each other, each owes to the employees of the other the same duty of exercising ordinary care as they owe to the public generally."[171] Further, addressing situations involving a contractor and "third persons," the court noted that other Louisiana appellate decisions found the applicable duty to be one of "refrain[ing] from creating a hazardous condition" or from "gross negligence by willfulness and wantonness."[172] On the basis of these authorities, the court concluded that the defendant owed the plaintiff "at the very least . . . the duty to refrain from gross, willful, or wanton negligence, and at most the duty to refrain from creating an unreasonable risk of harm or a hazardous condition."[173]

---

[168] *See Lemann*, 923 So.2d at 633.

[169] 593 So.2d 416 (La. App. 1 Cir. 1991).

[170] *Id.* at 418.

[171] *Id.* at 420.

[172] *Id.*

[173] *Id.* The court applied these rules, and found the defendant had not breached its duty, since another entity was responsible for the hazard that allegedly injured the plaintiff and for ordering its contractors to work in the area. *Id.*

In *McCarroll*, cited by Superior and discussed above,[174] the United States Court of Appeals for the Fifth Circuit cited *Lafont* and noted that Louisiana Courts of Appeal have held that:

> Independent contractors do not generally owe a duty to protect the employee of another independent contractor beyond the exercise of ordinary care that is owed to the public generally. One independent contractor owes another independent contractor at least "the duty to refrain from gross, willful or wanton negligence, and at the most the duty to refrain from creating an unreasonable risk of harm or a hazardous condition."[175]

Additionally, the Fifth Circuit in *McCarroll* cited *Parker v. Petroleum Helicopters, Inc.* in support of the proposition that no duty exists where a defendant "does not employ, share a contract, or actually supervise the plaintiff."[176] In *Parker*, another section of this Court held that the defendant owned no duty to the plaintiff because the defendant "did not own or have custody" of the area where the plaintiff was allegedly injured, "had no contractual relationship with the plaintiff's employer," did not supervise the methods used by the plaintiff to accomplish his work, and did not choose the work methods used by the plaintiff.[177]

In *Joyner v. Ensco Offshore Co.*, cited by Superior, another section of this Court found that "a contractor owes third parties a duty to exercise ordinary care and refrain from creating hazardous conditions in the fulfillment of its contractual obligations."[178] Nonetheless, considering the "facts and circumstances" of the accident before it, as the Louisiana Supreme Court counsels courts to

---

[174] Although *McCarroll* construes Louisiana law, it is an unpublished decision from a federal court, and therefore is neither precedential nor conclusive of the question presently before the Court. Nonetheless, the Court considers it, to the extent that it sheds light on the authority controlling the present issue.

[175] 561 Fed. App'x at 410 (citations omitted).

[176] 2002 WL 461655, No. 99–1139 (E.D. La. Mar. 20, 2002).

[177] 2002 WL 461655, No. 99–1139 (E.D. La. Mar. 20, 2002).

[178] No. 99-3754, 2001 WL 118599 at *3 (E.D. La. Feb. 9, 2001).

do,[179] the Court concluded that a co-defendant owed no duty to the plaintiff, analyzing the issue as follows:

> Mr. Joyner himself testified that based upon his 10-12 years experience as a wellhead technician, that he did not feel that his work method, or use of the cheater bar to tighten down the pins, was unsafe or risky. Nor did he voice an objection to tightening down the pins. This is critical considering that it was Joyner's specialized technical job to tighten down the lock down pins, not Clary's. Considering his specialized knowledge of the field and that it was Joyner's own decision to choose an appropriate work method, the Court cannot find that Clary owed a duty to prevent Joyner from injuring himself while tightening down the lock down pins. In other words, Clary's duty to Joyner did not encompass the risk that Joyner would be injured using a work method that Joyner himself, an experienced field technician who chose his own work methods and had the authority to refuse any unsafe work procedure, believed to be safe.[180]

Having determined that the plaintiff's specialized technical experience, confidence in the procedure, failure to object to the method used, and freedom to choose an appropriate work method warranted a finding that the defendant owed the plaintiff no duty, the Court granted summary judgment to the co-defendant.[181]

In *Verdin v. Kerr McGee Corp.*, also cited by Superior, another section of this Court concluded that two co-defendants—a "project auditor" and the "project auditor's" insurance company— were entitled to summary judgment because the plaintiff failed "to establish any legal duty owed . . . to him" by these parties, who "did not own the platform," and "did not employ" an unnamed defendant.[182]

---

[179] *See Lemann*, 923 So.2d 627, 633 ("In deciding whether to impose a duty in a particular case, the court must make a policy decision in light of the unique facts and circumstances presented.").

[180] 2001 WL 118599 at *4.

[181] *Id.* at pp. *4–*5.

[182] No. 95-1483, 1997 WL 39308 (E.D. La. Jan. 30, 1997).

Making an *Erie* guess in the present case, the Court finds, following the holdings of *Lafont* and other Louisiana appellate courts,[183] and consistent with the findings of other federal courts,[184] that independent contractors owe third parties at "at the very least . . . the duty to refrain from gross, willful, or wanton negligence, and at most the duty to refrain from creating an unreasonable risk of harm or a hazardous condition."[185]

The Louisiana Supreme Court has defined "gross negligence" as "the want of even slight care and diligence," and "the want of that diligence which even careless men are accustomed to exercise."[186] The Louisiana Supreme Court does not appear to have addressed the meaning of "unreasonable risk[s] of harm" in the context of claims arising from injuries suffered by plaintiffs who assist at work sites.[187] Louisiana Courts of Appeal, however, have done so.

In *LeBleu v. Dynamic Indus. Constructors, Inc.*, for example, the Louisiana Third Circuit Court of Appeal found that an employee of the defendant created an unreasonable risk of harm when he attempted to hitch a trailer using only a pry bar, thereby injuring the plaintiff, a construction worker who was assisting the employee.[188] Consequently, Superior's assertion that Bass will be unable to establish the existence of any duty is unavailing since, under Louisiana law, independent

---

[183] *Lafont*, 593 So.2d at 420, *Cormier v. Honiron Corp.*, 2000-446, 771 So.2d 193, 197 (La. App. 3 Cir. 9/27/00).

[184] *McCarroll*, 561 Fed. App'x at 409–10; *Joyner*, 2001 WL 118599 at *3.

[185] *Lafont*, 593 So.2d at 420.

[186] *Rabalais v. Nash*, 2006-0999, 952 So.2d 653, 658 (La. 3/9/07) (citations omitted).

[187] Most frequently, Louisiana courts have addressed the issue in the context of premises liability. *See, e.g. Broussard v. State ex rel. Office of State Bldgs.*, 2012-1238, 113 So.3d 175 (La. 4/5/13).

[188] 526 So.2d 1184 (La. App. 3 Cir. 1988).

contractors generally do owe third parties a duty, and such a duty may extend to incidents at work sites arising from unsafe practices.

### ii.        Facts and Circumstances

The Louisiana Supreme Court instructs that the existence of a duty is determined both by the applicable law, if any exists, and by the "unique facts and circumstances" of the case.[189] Accordingly, the Court now considers whether any of the parties' cited cases demonstrate that Bass will be unable to establish the existence of a duty in light of the unique facts and circumstances presented by the instant case.

In *Joyner*, cited by Superior, another section of this Court found significant the plaintiff's 10-12 years of specialized technical experience.[190] Here, no such experience has been alleged, much less supported by undisputed evidence, making the case inapposite. In *Verdin*, also cited by Superior, another section of this Court declined to impose a duty because the defendant did not own the platform or employ the defendant.[191] Here, as noted above, disputed facts exist regarding Bass's role in the gravel pack operation, including whether a Superior employee ordered Bass to move the hose,[192] and whether Superior was "in charge" of the operation where Bass was allegedly injured: Superior contends that Nabors's contract with Energy XXI establishes that "Nabors alone is authorized to instruct their employees on how they do their work," while Bass cites Foreman's

---

[189] *Lemann*, 923 So.2d at 633 ("In deciding whether to impose a duty in a particular case, the court must make a policy decision in light of the unique facts and circumstances presented.").

[190] *See Joyner*, 2011 WL 118599 at *4.

[191] *See Verdin*, 1997 WL 39308 at *2. The court in *Verdin* also noted that cases addressing duties owed by rig owners to employees of an independent were "inapplicable" to the facts before it, but nonetheless considered whether the defendants had exercised "operational control" within the meaning of these cases. *Id.* at *4. Finding that the summary judgment record failed to establish "operational control," the court held that "even if operational control in itself could create tort liability, no liability would exist in this matter." *Id.* at *4-*5.

[192] Rec. Doc. 42–7 at p .1; Rec. Doc. 49–1 at p 2.

deposition in support of the proposition that "[n]either the rig manager, Mr. Pradillo, nor the crew supervisor, Mr. Foreman, were in charge of the job being performed on June 28, 2012."[193]

Finally, in *McCarroll*, discussed above and cited by Superior, the United States Court of Appeals for the Fifth Circuit found sufficient summary judgment evidence that the defendant had no contractual or employment relationship with the plaintiff, that the defendant supplied no tools to the plaintiff, and that the plaintiff's foreman ordered the plaintiff to participate the work in which he was injured. Here, by contrast, no such findings are possible, because of the factual disputes just described.

Although duty is a question of law, Louisiana courts caution that "summary judgment is proper only where no duty exists as a matter of law and no factual or credibility disputes exist[]."[194] In light of the factual disputes still present in this case, the Court is unable to conclude, as a matter of law, that Bass will be unable to establish that Superior owed him a duty.[195]

### 2.     Breach

Superior asserts that even if Bass "could establish a duty under the circumstances of this case," Bass will be "unable to establish that Superior breached any such duty," because, under Louisiana law, "a principal is not responsible for the actions of an independent contractor when the principal only gives general instructions."[196] In support of this proposition, Superior cites several

---

[193] Rec. Doc. 41–1 at p. 5 (citing Rec. Doc. 42–3 at pp. 6; 8; 10); Rec. Doc. 49 at p.2 (citing Rec. Doc. 49–2 at pp. 8–9).

[194] *Parish v. L.M. Daigle Oil Co., Inc.*, 98-1716, 742 So.2d 18 (La. App. 3 Cir. 6/23/99). *See also Coates v. Nettles*, 563 So.2d 1257 (La. App. 1 Cir. 1990) (same).

[195] To the extent that Superior urges this Court to find the present case analogous to *Joyner*, Superior has not pointed to undisputed facts demonstrating that Bass had any specialized technical experience, let alone the 10-12 years of experience found significant in that case.

[196] Rec. Doc. 42–2 at p. 13.

cases, of which none supply a Louisiana rule of law that governs the present issue.  Superior quotes *Landry v. Huthnance Drilling Co.*, which was decided under the general maritime law[197] and thus has no bearing on Bass's Louisiana negligence claim. Superior also cites *Graham v. Amoco Oil Co.*, in which the United States Court of Appeals for the Fifth Circuit, applying Louisiana law, held that "a principal is not liable for the negligent acts of an independent contractor acting pursuant to the contract."[198] In *Graham*, the plaintiff sought to hold the defendant rig owner liable for the alleged negligence of another company performing work on the rig, a theory of recovery alleged here.[199] Additionally, Superior cites *Ainsworth v. Shell Offshore* where, as in *Graham*, the plaintiff sought to hold the defendant rig owner liable for the alleged negligence of a contractor working on the rig.[200] Here, unlike in these cases, Bass asserts that Superior owed him, and breached, a duty arising from its own conduct, not from conduct of third-party independent contractors hired by Superior. Accordingly, having been presented with no applicable authority on point, the Court cannot find, as a matter of law, after taking all facts in the light most favorable to Bass and after drawing all inferences in Bass's favor, that Superior is entitled to summary judgment on the issue of breach.

## IV. Conclusion

Superior asserts that Bass will be unable to show that it owed Bass a duty, and that the Court should therefore grant its request for summary judgment. However, independent contractors generally do owe a duty to third parties under Louisiana law. To the extent that Superior contends that the specific facts and circumstances of this case foreclose Bass from establishing that Superior

---

[197] 889 F.2d 1469, 1469 (5th Cir. 1989).

[198] 21 F.3d 643, 645 (5th Cir. 1994)

[199] *Id.*

[200] 829 F.2d 548 (5th Cir. 1987).

owed him a duty, its argument fails since the parties dispute who ordered Bass to move the hose, and who was in charge of the operation where Bass was allegedly injured. Therefore, the Court cannot conclude that Bass will be unable to establish Superior owed it a duty. Further, Superior has not cited applicable law or pointed to the requisite undisputed facts to permit the Court to find, as a matter of law, that it did not breach its duty.  Finally, Superior contends that Bass admits that he is a borrowed employee to the extent that Bass argues that Superior controlled and supervised him. However, Superior presents an incomplete analysis on this point, and the Court finds that genuine issues of material fact prevent the Court from concluding, as a matter of law, that Bass was Superior's borrowed employee. Accordingly,

**IT IS HEREBY ORDERED** that Superior's "Motion for Summary Judgment"[201] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this 3rd  day of February, 2015.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[201]  Rec. Doc. 42.